UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIO MONSERRATE, ARTURO JUAREZ, and MARIA JUAREZ,

Case No. 10-CV-3732(SLT)(SMG)

Plaintiffs,

-against-

K.K. MACHINE CO., INC., KAREL HAJEK a/k/a CHARLES HAJEK

Defendants.
---------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM TO THE DEFENDANTS' MEMEORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE***

## ARGUMENT

**THIS COURT SHOULD PERMIT PLAINTIFF MARIO MONSERRATE'S DEPOSITION TESTIMONY TO BE READ IN LIEU OF LIVE TESTIMONY AS PLAINTIFFS HAVE AMPLY DEMONSTRATED, UNDER THE PREVAILING STANDARD, THAT THEY DID NOT PROCURE PLAINTIFF MONSERRATE'S ABSENCE AND THE DEFENDANTS' HAVE NOT PRESENTED A COMPELLING REASON AS TO WHY SUCH TESTIMONY SHOULD NOT BE READ INTO EVIDENCE IN LIEU OF A LIVE APPEARANCE**

Contrary to what the defendants' intimate in their opposition, courts in this Circuit have applied FED. R. EVID. 32(a)(4)(B) broadly. In the seminal case of *Richmond v. Brooks*, 227 F.2d 490 (2d Cir. 1955), the Second Circuit held Plaintiff in California could introduce deposition testimony at trial in lieu of traveling to New York. The Court reasoned that her inability to afford a trip to New York should not deprive her of her ability to proceed to trial. *Id.* at 492. The defendants' attempted to demonstrate that the plaintiff "procured" her own absence by virtue of the fact that she was in New York City over the Christmas holiday with her husband two weeks before the trial. The Court dismissed this argument reasoning that this does not evidence procurement as no one should be required to live in New York City expensively or be penalized for a Christmas trip. *Id.* at 494.

In *Nash v. Heckler*, 108 F.R.D. 376 (W.D.N.Y. 1985), the Court, in holding that Defendants can introduce party depositions in lieu of live testimony, thoroughly elaborated on this standard:

> This Court shares that stated preference for live testimony, particularly in the case of important [**4] witnesses or parties to the action. However, rule 32 *HN3* establishes situations in which deposition testimony may properly be used and while the directives of such rule (particularly subsection (a)(3)(B)) appears

> precatory and creating a degree of discretion in the court, nonetheless it follows that such exceptions should be allowed [*378] to apply **absent some compelling reason otherwise**. Such a view is consistent with the limited case law in this area. In what may be the leading case on the question, *Richmond v. Brooks,* 227 F.2d 490 (2d Cir. 1955), the Court permitted a plaintiff living in California to introduce her deposition in lieu of live testimony at a trial held in New York. While the case might arguably be distinguished on factual grounds, subsequent decisions of the same court have indicated a broad application of the rule, *see e.g. Klepal v. Pennsylvania Railroad Company,* 229 F.2d 610, 612 (2d Cir. 1956), as have other courts. *See Houser v. Snap-On Tools Corporation,* 202 F. Supp. 181, 189 (D.Md. 1962) ("the mere absence of the deponent from the 100 mile area is sufficient"); *U.S. v. Intern. Business Machines Corp.,* 90 F.R.D. 377, 382 (S.D.N.Y. 1981). The [**5] plaintiff's contention that the substantial identity of interest between the deponents in question and defendants in the case *ipso facto* raises a spectre of illicit procurement by the defendants of the absence of such deponents from trial is implicitly rebutted by *Richmond v. Brooks, supra,* and explicitly rejected in *Houser v. Snap-On Tools Corporation, supra* at 189 ("procuring absence and doing nothing to facilitate presence are quite different things"). *Id.* (emphasis added).

Here, the plaintiffs have certainly met their burden in introducing evidence of the fact that plaintiff Monserrate absence was not procured by the plaintiffs. The defendants' attempt to mitigate and mischaracterize plaintiff Monserrate's circumstances, however the fact remains that they are serious and well within the standard. Plaintiff Monserrate went back to his native country of Ecuador due to many pressing personal, financial and health related concerns. He was very ill, unable to obtain employment, unable to afford food necessary for his diet, unable to pay rent and was being asked to leave his home. These problems were compounded by an ongoing litigation in his country concerning his home. He will be unable to return to New York for trial because of his immigration status and his inability to obtain a visa. Additionally, he

would have no place to live, nor would he be able to afford the food necessary for his diet.

The defendants' reliance on *Garcia-Martinez v. City & County of Denver*, 392 F.3d 1187 (10th Cir. 2004) is misplaced several respects. Foremost, it is not the same standard as that which is applied in this Circuit. The defendants seem to suggest that *Garcia-Martinez* elaborates on the narrower standard set out in *Richmond* of the "procure" element of FED. R. EVID. 32(a)(4)(B); however, nowhere in its reasoning does the Court in *Garcia-Martinez* indicate that it is relying on, or elaborating on *Richmond* and its progeny.

Even assuming *arguendo*, that *Garcia-Martinez* was applicable, the facts here are distinguishable. In *Garcia-Martinez*, the plaintiff's sole reason for not appearing was that he could not return as there was a standing deportation order[1]. In ruling against plaintiff, the Court heavily relied on the fact that plaintiff presented no other options for providing testimony or some how making himself available. *Garcia-Martinez*, 392 F.3d at 1191-2. Here, there is a distinction in that the plaintiffs have offered to produce plaintiff Monserrate for video testimony in lieu of in court testimony prior to his departure. See annexed affirmation of William Cafaro. Moreover, here plaintiff Monserrate has averred in an affidavit not only that he will be unable to return to New York for trial because he is undocumented and will not be able to obtain a visa, but also that he would have no place to live, nor would he be able to afford the food necessary for his diet.

---

[1] Interestingly, there was a dissent in *Garcia-Martinez* which criticizes the majorities' reliance on the fact that the plaintiff did not attempt to obtain a visa to come back for trial. The Court noted that it was not a fact in "reasonable dispute" that someone in the plaintiff's position would not be able to obtain a visa. The Dissent went on further to say "The federal rules cannot have envisioned that a party break the law and risk arrest to testify, nor that he tilt windmills to show that he tried." *Garcia-Martinez*, 392 F.3d at 1195. (dissent)

The defendants' purported equitable argument should be disregarded. First, it does not comport with the law. Second, defendants were afforded an opportunity to elicit video recorded testimony subsequent to plaintiffs' depositions and prior to plaintiff Monserrate's departure. They rejected the proposal. As made clear in the annexed affirmation of William Cafaro, plaintiffs' counsel, shortly after depositions, became aware of the fact that plaintiff Monserrate would have to leave his house as he was significantly behind on the rent. In light of all his problems, the only alternative at that point was to return to his native country of Ecuador. Upon finding out about this fact, William Cafaro requested plaintiff Monserrate to stay as long as he could so that his testimony could be video recorded. Mr. Cafaro contacted defense counsel explained the circumstances and requested that videotaped testimony be taken. By e-mail, defense counsel rejected this proposal.

## II. THE DEFENDANTS' HAVE NOT OVERCOME PLAINTIFFS' SHOWING THAT DEFENDANT KAREL HAJEK'S TESTIMONY CONCERNING THE US DOL MATTER IS RELEVANT AND OTHERWISE NOT PREJUDICIAL

In plaintiffs' memorandum in support of this motion, plaintiffs have aptly demonstrated that the introduction of defendant Karel Hajek's deposition testimony concerning a US DOL matter is relevant to demonstrate a pattern and scheme, willfulness and is otherwise relevant for the purpose of impeachment on cross-examination. The defendants have not in any way demonstrated that the introduction of this evidence would be prejudicial. On the contrary, they seem to tacitly admit there would be no prejudice as they stated that after discussion of this issue the parties agreed to a bench trial, "and the

Court is not subject to the same risk of inflammation of emotions as a jury trial might be." Defendants' Memo in Opposition, p. 2.

The defendants strain to argue that the introduction of such evidence would not be relevant. The defendants seem to suggest that there is no evidence of a pattern or scheme because in 2001 defendants did not pay overtime, but in this case the plaintiffs' were allegedly "forced" to admit they were paid for a "substantial amounts" of overtime. This purported distinction tends to overlook the pattern and scheme that was clearly and more fully spelled out in plaintiffs' memorandum in support; namely, that the defendant is and was keeping two sets of time records and paying one set that constitutes overtime hours at straight time.

On the issue of introducing the evidence to demonstrate willfulness, the defendants' argue that it is superfluous. Defendants argue that if plaintiffs' establish that they were paid straight time for off the clock work willfulness will be "virtually automatic." The defendants neglect to understand that willfulness is an element of our *prima facia* case.

The defendants do not address in anyway plaintiffs' argument as to permitting inquiry into this matter on cross examination pursuant to FED. R. EVID. 608(b) for the purpose of testing the defendant's veracity. Thus, there is no need for reply.

## III. THE DEFENDANTS' HAVE NOT DEMONSTRATED THAT PLAINTFFS' VIDEO RECORDINGS AND STILL PHOTOGRAPHS OF SUCH RECORDINGS ARE IRRELEVANT

Relevant evidence means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence." FED. R. EVID. 401. The issue of whether the plaintiffs, and other employees, worked on weekends is the most critical issue of this case. Plaintiffs maintain that they worked on weekends. The defendants took the position that employees virtually never work on weekends. Given the critical nature of this issue, and in light of the broad interpretation of relevancy, plaintiff should be allowed to introduce it as corroborative of its position.

The attacks on the video/photographs espoused by the defendants certainly can go to the weight accorded to this evidence; however, the defendants cite no authority which would suggest such evidence is irrelevant. The ultimate weight afforded to plaintiffs' video recording/photographs should be determined by the fact finder.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Court grant plaintiffs' *in limine* motion in its entirety.

Dated: New York, New York
January 12, 2012

Respectfully Submitted,

/s/

Andreas Geroulakis (AG9752)
Law Offices of William Cafaro
Attorney for Plaintiff
19 West 44th Street, Suite 1500
New York, NY 10036